# 23-905

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

---

Structured Asset Sales, LLC

*Plaintiff - Appellant*

v.

Edward Christopher Sheeran, P/K/A Ed Sheeran, Sony/ATV Music Publishing, LLC, Atlantic Recording Corporation D/B/A Atlantic Records, BDI Music Ltd., Bucks Music Group Ltd., The Royalty Network, Inc., David Platz Music (USA) Inc., Amy Wadge, Jake Gosling; Ed Sheeran Limited, Gingerbread Man Records, Amy Wadge Records, Sticky Studios, Sony/ATV Music Publishing, Ltd. UK, Atlantic Records UK, BDI Music, Bucks Music Group, Warner Music Group Corporation, DBA Asylum Records, Warner Music Group, Ltd. UK, Does 1-10

*Defendants - Appellees,*

---

REPLY OF RANDY CRAIG WOLFE TRUST AND SOUND AND COLOR, LLC IN SUPPORT OF MOTION FOR LEAVE TO FILE *AMICUS CURIAE* BRIEF IN SUPPORT OF PLAINTIFF-APPELLANT'S APPEAL

---

Copyright Infringement Action on Appeal from the May 16, 2023 Order and Judgment of The Honorable Louis L. Stanton, of the United States District Court for the Southern District of New York, No. 1:18–cv–05839

---

FRANCIS ALEXANDER, LLC
Alfred J. (AJ) Fluehr, Esquire
280 N. Providence Road | Suite 1
Media, PA 19063
T: (215) 341-1063
F: (215) 500-1005
*Law Firm / Lawyer for Amicus Curiae*

## Introduction

The Defendant-Appellees' (hereinafter Defendants) response in opposition to this motion is far off base.

In addition to baselessly discounting the amici's undeniable interests in the outcome of this litigation, Defendants make extensive arguments concerning the merits of the proposed amicus brief. Setting aside that Defendants' response gets the law wrong, the fact that a party disagrees with the merits positions taken in an amicus brief is *not a basis* to deny a motion for leave to file an amicus brief. One party, or another, will almost always disagree with an amicus brief.

Motions for leave to file an amici brief are routinely granted, and the concerted effort to oppose amici's motion and brief—without any valid basis—shows that Defendants recognize that the lower court's opinion on the deposit requirement has serious flaws that they do not want thoroughly examined on appeal.

## Argument

### I. Defendants Improperly Discount Amici's Interests

The defendants, including multinational behemoth Sony, assert that because the Randy Craig Wolfe Trust previously litigated the deposit copy issue in the Ninth Circuit "Stairway to Heaven" case, that it therefore should not be permitted to take a position in this litigation. (Sound and Color, LLC was not addressed.)

No authority was given to support this position, and none exists to the knowledge of amici's counsel. The fact that a different circuit addressed the deposit issue regarding one of the Trust's many songs in no way precludes the Trust from taking a position in this circuit, about a different song, on an issue which tremendously impacts the Trust's rights in the other hundreds of songs it owns.

Sony owns thousands upon thousands of music copyrights. Is it truly Sony's position that a court opinion in a different circuit about one of Sony's songs precludes Sony from taking a position on a different song, in a different circuit, on a legal issue that would affect the rest of its thousands of copyrights? Sony would obviously never apply this argument to itself, and it is a blatant expectation of double standards.

The Trust is no Sony—it is a small charity which provides instruments to disadvantaged school children—but it does own approximately one hundred and ninety 1909 Act songs which will be directly affected by this case. See Declaration of Michael Skidmore.

In short, the amici have vested and concrete interests in the outcome of this litigation and Defendants' argument has no legal support or basis. It speaks volumes that, on an issue of national significance which will affect virtually every 1909 Act

musical copyright, the Appellees are trying to restrict the arguments being put before the court.

## II. Defendants' Disagreement with Amici Is Not a Reason to Deny the Motion

Defendants' response attempts to litigate the merits of amici's proposed brief. Amici address the merits below out of completeness, but this is not relevant to whether Amici should be permitted leave to file. By definition when an amici supports one party, the opposing parties will probably oppose the arguments being made. This is the point of allowing amicus briefs, so the court has multiple points of view on issues of national significance and can fully consider the question being presented.

## III. Defendants' Response Refuses to Address the Central Questions Before this Circuit

Before stepping through Defendants' erroneous arguments, it is instructive to note what Defendants' response refuses to address, *namely the two central questions before this Circuit*. Defendants did not address these questions because the answers contradict their arguments.

**First**, Defendants glaringly nowhere quote any historical law or case which plainly and clearly states how a copyright was created and defined under the 1909

Act. If there is such a clear answer in the 1909 Act, why can't the Defendants quote it?

In stark contrast, Appellant and amici have a clear answer: copyrights are protected as created, as has always been the case. Roy Export Estab. v. Columbia Broadcasting, 672 F.2d 1095, 1101 (2d Cir. 1982) (stating that under the 1909 Act, "[s]tate law protection begins with a work's creation," and continues until owner "secures federal protection"); La Cienega Music Co. v. ZZ Top, 53 F.3d 950, 952-53 (9th Cir. 1995)[1] (stating that "an unpublished work was protected by state common law copyright from the moment of its creation until it was either published or until it received protection under the federal copyright scheme" [emphasis added]); HR Rep. No.94-1476, at p.129-31 (1976) (stating that under the 1909 Act there was "a dual system of 'common law copyright' for unpublished works and statutory copyright for published works" and registered works). That works are protected as created was *always* the rule, first under common law and then incorporated into the 1976 Act.[2]

The 1909 Act does not address how copyright is created or its scope, and is concerned with enforcement of an owner's rights upon publication or registration.

---

[1] *overridden on other grounds by* Act of Nov. 13, 1997, Pub. L. No. 105-80, § 11, 111 Stat. 1529, 1534 (codified as amended at 17 U.S.C. § 303(b) (2000)).

[2] Defendants attempt to claim that copyright is statutory, ignoring that federal copyright is statutory, but there was a dual common law and federal system from 1790 to 1978. Id.

Defendants' attempts to torture and twist the text of the 1909 Act to find a provision about creation or scope of a copyright are not availing. The Supreme Court itself noted in 1939 that the existence of a copyright is not dependent on the deposit. Washingtonian Publ'g Co. v. Pearson, 306 U.S. 30, 41 (1939) ("the requirement for deposit is not for the purpose of a permanent record of copyrighted publications and . . . such record is not indispensable to the existence of the copyright"). The deposit requirement was archival and jurisdictional, meant to help identify the copyright; it had nothing to do with the scope of copyright.

**Second**, Defendants refuse to address why the 1909 Act was passed in the first place, which was to expand copyright beyond sheet music. White-Smith v. Apollo[3] held that a mechanical reproduction of a musical composition was not a copy or duplication of the composition under the 1831 Act, and that an owner did not have an enforcement right to prohibit mechanical reproductions of a composition. Restated, an owner could only prohibit someone from making sheet music copies of a registered composition, not a piano roll or phonorecord. The proposed amicus brief points out that the 1909 Act was passed so that, upon federal registration, an owner could prevent someone from reproducing a composition *no matter what medium the copy was fixed in*. In other words, the 1909 Act illustrates that copyright

---

[3] 209 U.S. 1, 10-11 (1908).

protection extended beyond sheet music. This is a real problem for Defendants, which is why their response does not address it.

The Supreme Court has itself explicitly made the point that after <u>White-Smith</u>, with the 1909 Act, "Congress determined that the copyright statutes should be amended to insure that composers of original musical works received adequate protection to encourage further artistic and creative effort" and that mechanical reproductions of a composition were now copies of the compositions they contained. <u>Goldstein v. California</u>, 412 US 546, 565-66 (1973).[4]

If the 1909 Act explicitly recognized that a copy of a work could be fixed in any medium, it was obviously understood and contemplated that the underlying composition was not limited to sheet music. When this context is understood, the absurdity of arguing that a 1909 Act musical copyright could only be sheet music—when even a copy of the composition can be fixed in any form—comes into focus.

Defendants also do not address that for 106 years no court ruled that a 1909 Act musical composition could only be sheet music, an indication that this was never in fact the law.

---

[4] Note that the 1909 Act, in contrast, specifically did not extend copyright to the mechanical reproduction of particular performances, which are today called "sound recordings." <u>Goldstein</u>, 412 US at 564.

In sum, the point of the point 1909 Act was to expand musical composition copyright past sheet music and expand the protection for musical works, yet the defense bar is trying to convince the courts over 100 years later to (1) ignore why the 1909 Act exists in the first place, and (2) hold that musical compositions are limited to sheet music.

## IV. Defendants' Arguments are Clearly Erroneous

Defendants' response on the merits demonstrates exactly why the amicus brief is desirable. Despite proclaiming amici's brief to be "objectively false," while ignoring the central issues as noted above, Defendants' piecemeal positions lack depth and nuance and do not mesh with the relevant laws and history.

**First**, Defendants claim that the common law could not have initially defined a copyright under the 1909 Act because federal registration extinguished common law rights. Defense Response, at p.3. They fail to realize that the extinguishment they reference pertains to common law *enforcement* rights, like the rights of exclusive duplication or performance, aka the "bundle of sticks." Restated, upon registering a copyright, the copyright's enforcement became exclusively one of federal jurisdiction. However, this does not mean that registering a copyright altered the existing scope of the copyright or changed the work.[5] Ironically, Defendants cite

---

[5] Defendants take amici's brief out of context when they quote amici's point that registering a common law copyright gave it "additional protections." Defense Response, at p.3. Defendants

the 1909 Supreme Court case Caliga for support, not realizing that the quote they present and underline identifies the specific rights as enforcement rights. Def. Response, at p.6.

This extinguishment of the right to common law remedies has nothing to do with how a copyright was initially created and vested, or the scope of copyright. Defendants fail to distinguish between the work itself, and the protections given to the work. The 1909 Act deals with the latter, not the former.

The implication of Defendants' argument is that the conversion of a common law copyright to federal jurisdiction created a new copyrighted work or altered the preexisting work being registered. No authority supports this position.

**Second**, Defendants claim that some states did not have state copyright law. But this does nothing to change the fact that works, including under the 1909 Act, were protected as created under the general common law, and then received federal protection upon being registered or published. Roy Export, 672 F.2d at 1101 (stating that under the 1909 Act, "[s]tate law protection begins with a work's creation," and continues until owner "secures federal protection"); La Cienega, 53 F.3d at 952-53

---

falsely insinuate to the court that amici believe that a copyright owner can simultaneously enforce common law and federal rights. Amici believe no such thing, and the reference to federal jurisdiction conferring "additional protections," referred to the benefits received by registering, not that common law protections continue after registration. Amici cited numerous cases explaining this, including Roy Export.

(stating that "an unpublished work was protected by state common law copyright from the moment of its creation until it was either published or until it received protection under the federal copyright scheme" [emphasis added)); HR Rep. No.94-1476, at p.129-31 (1976). Again, the 1976 Act merely codified the common law standard that copyrights are protected as created and made system entirely federal. To deny that works are protected as created is to deny the very essence of copyright.

**Third**, Defendants attempt to claim that the Plaintiff published this work by creating the deposit outline sheet and submitting it to the copyright office as required by the 1909 Act. Def. Response, at p.8. This is frivolous; for a work to be published it must be offered for sale, or otherwise distributed, to the general public.[6] La Cienega, 53 F.3d at 952-53 (stating that publication consists of sale or other distribution to general public).[7] Amici know of no evidence that the handwritten deposit was sold or distributed to the public. Note that distribution of the sound recording which embodies Plaintiff's composition is not a publication. 17 U.S.C. § 303(b).

**Fourth**, Defendants repeatedly cite to the Skidmore v. Led Zeppelin case in the Ninth Circuit, as if that opinion resolves the deposit issue. But the point of

---

[6] Even if the deposit outline was "published," only the notes on the sheet music would be published, not the full composition embodied in the sound recording.
[7] *overridden on other grounds by* Act of Nov. 13, 1997, Pub. L. No. 105-80, § 11, 111 Stat. 1529, 1534 (codified as amended at 17 U.S.C. § 303(b) (2000)).

Plaintiff's appeal, and this amicus brief, is that the Ninth Circuit's decision was wrong and the reasoning therein inapt. The Defendants are asking that this Circuit rubberstamp the Ninth Circuit's opinion and afford it deference, despite its obvious flaws. Amici believe that this Circuit should and will conduct its own searching review of the issue and come to its own conclusions.

V. CONCLUSION

Amici respectfully request that the motion be granted.[8]

*****

Francis Alexander, LLC
*/s/ AJ Fluehr*
AJ Fluehr, Esquire
Attorney ID No.: 316503
280 N. Providence Road | Suite 1
Media, PA 19063
T: (215) 341-1063
F: (215) 500-1005
*Law Firm / Lawyers for Amicus Curiae*
*/d/ October 20, 2023*

---

[8] This motion reply is 2,171 words including footnotes, under the limit of 2,600 provided for in FRAP 27.

## Certificate of Service

I hereby certify that a true and correct copy of the foregoing Reply of Randy Craig Wolfe Trust and Sound and Color, LLC In Support of Motion for Leave to File *Amicus Curiae* Brief In Support of Plaintiff-Appellant's Appeal have been electronically filed with the Court via the electronic filing system and served upon all counsel of record via electronic mail:

    Donald Steven Zakarin, Esquire
    Ilene Susan Farkas, Esquire
    Andrew Goldsmith, Esquire
    Brian Maida, Esquire
    Pryor Cashman
    7 Times Square
    New York, NY 10036
    T: 212.326.0188
    F: 212.798.6382
    E: dzakarin@pryorcashman.com
    E: ifarkas@pryorcashman.com
    E: agoldsmith@pryorcashman.com
    E: bmaida@pryorcashman.com

*****

Francis Alexander, LLC
*/s/ AJ Fluehr*
AJ Fluehr, Esquire
Attorney ID No.: 316503
280 N. Providence Road | Suite 1
Media, PA 19063
T: (215) 341-1063
F: (215) 500-1005
*Law Firm / Lawyers for Amicus Curiae*
*/d/ October 20, 2023*

# DECLARATION OF MICHAEL SKIDMORE

I, MICHAEL SKIDMORE, declare under penalty of perjury as follows:

1. I am a competent adult over the age of eighteen years and I have personal knowledge of, and am fully familiar with, the facts set forth in this Declaration.

2. I am the trustee of the Randy Craig Wolfe Trust. Randy Craig Wolfe (p/k/a Randy California) was a prolific songwriter, musician, and founder of the band Spirit.

3. The Trust is a charity which provides musical instruments to disadvantaged school children.

4. Following Mr. Wolfe's death, all interest Mr. Wolfe owned in the songs he authored was transferred to the Trust.

5. The Trust owns, at least in part, approximately 190 musical compositions copyrighted prior to 1978.

I declare under penalty of perjury under the laws of the United States of American that the foregoing is true and correct.

Dated: October 20, 2023
Quincy, Massachusetts

Michael Skidmore